AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
Southern District of Indiana

**SEALED**

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| LATASHA WEATHERSPOON -01 | ) | Case No.   1:24-mj-0277-KMB |
| MARLENE RICHARDSON -02 | ) | |
| CHRISTINA ENRIQUEZ -03 | ) | |
| | ) | |
| | ) | |
| _____ | ) | |
| *Defendant(s)* | | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of ____October - December 2023____ in the county of ____Marion____ in the
____Southern____ District of ____Indiana____ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1) & 846 | Conspiracy to Possess with Intent to Distribute and Distribution of 500 Grams or More of a Mixture or Substance Containing a Detectable Amount of Methamphetamine |
| 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii) and 18 U.S.C. § 2 | Possession with Intent to Distribute 500 Grams or More of a Mixture or Substance Containing Methamphetamine |

This criminal complaint is based on these facts:

See attached Affidavit.

☑ Continued on the attached sheet.

_____
/s/ Sean P. Yauger
*Complainant's signature*

SA Sean P. Yauger, DEA
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed.R.Crim.P. 4.1 by____
____telephone____ *(reliable electronic means)*

Date:  ____March 21, 2024____

City and state:   ____Indianapolis, Indiana____

Kellie M. Barr
United States Magistrate Judge
Southern District of Indiana

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

Sean P. Yauger, a Special Agent (SA) with the United States Drug Enforcement Administration (DEA), being duly sworn, deposes and states:

## INTRODUCTION

1. I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request a search warrant. I have been employed by the Drug Enforcement Administration (DEA) since February 1998. I am currently assigned to the DEA Indianapolis District Office, Indianapolis, Indiana, and have been so assigned since March 2020.

2. In connection with my official DEA duties, I investigate criminal violations of state and federal controlled substances laws, including, but not limited to, Title 21, United States Code, Sections 841, 843, 846 and 848, as well as Sections 952, 960 and 963. I have received special training in the enforcement of laws concerning controlled substances as found in Title 21 of the United States Code. I have testified in judicial proceedings and prosecutions for violations of controlled substance laws. I also have been involved in various types of electronic surveillance and in the debriefing of defendants, witnesses, and informants, as well as others who have knowledge of the distribution and transportation of controlled substances, and the laundering and concealing of proceeds from drug trafficking, in violation of Title 18, United States Code Sections, 1956 and 1957. I have received training in investigations involving the interception of wire and electronic communications. I am familiar with the ways

in which drug traffickers conduct their business, including, but not limited to, their methods of importing and distributing controlled substances and their use of telephones and code language to conduct their transactions.

3. I have personally participated in the investigation set forth below. I am familiar with the facts and circumstances of the investigation through my personal participation; from discussions with other agents of the DEA and other law enforcement; from my discussions with witnesses involved in the investigation; and from my review of records and reports relating to the investigation. Unless otherwise noted, wherever in this Affidavit I assert that a statement was made, the information was provided by another Special Agent, Task Force Officer, law enforcement officer, or witness who may have had either direct or hearsay knowledge of that statement and to whom I or others have spoken or whose reports I have read and reviewed.

4. Such statements are among many statements made by others and are stated in substance and in part unless otherwise indicated.

5. I have not included each and every fact that has been revealed through the course of this investigation. I have set forth only the facts that are believed to be necessary to establish the required foundation for this issuance of the requested warrant.

6. This affidavit is submitted in support of a request for the issuance of a criminal complaint and arrest warrant for Latasha WEATHERSPOON, Marlene RICHARDSON, and Christine ENRIQUEZ for the offense of Possession with Intent to Distribute Controlled Substances, in violation of Title 21, United States Code,

Sections 841(a)(1) and (b)(1)(A) and Conspiracy to Possess with Intent to Distribute Controlled Substances, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(A) and 846. Since this affidavit is being submitted for the limited purpose of securing an arrest warrant and complaint, I have not included each and every fact known to me concerning this investigation. I have only set forth the facts that I believe are necessary to establish probable cause for the proposed arrest warrant and complaint.

## FACTS SUPPORTING PROBABLE CAUSE

7. The United States, including the United States Drug Enforcement Administration (DEA), has been conducting a criminal investigation of Latasha WEATHERSPOON (a/k/a Tasha), hereinafter referred to as WEATHERSPOON; Marlene RICHARDSON, hereinafter referred to as RICHARDSON; and Christina ENRIQUEZ, hereinafter referred to as ENRIQUEZ, regarding possible violations of Title 21, United States Code, Sections 841, and 846, Possession with Intent to Distribute, and Conspiracy to Possess with Intent to Distribute Controlled Substances, among others.

8. During October 2023, investigators from another DEA Domestic Office, received information from a Confidential Source of Information, hereinafter referred to as "CS[1]", regarding WEATHERSPOON, who was alleged to be a coordinator for

---

[1] Confidential Source of Information (CS) is providing information in hopes of obtaining judicial consideration after being arrested by the DEA for conspiracy to distribute methamphetamine. The CS is a convicted felon with prior arrests and convictions for distribution of controlled substances. All information

transporting bulk quantities of fentanyl and methamphetamine by commercial airline from Los Angeles, California to Indianapolis, Indiana.   The CS advised he/she previously proposed introducing WEATHERSPOON to his/her Mexico based Source of Supply, hereinafter referred to as "SOS", for fentanyl and methamphetamine. According to the CS, WEATHERSPOON developed her own relationship with a separate SOS and is currently being supplied bulk quantities of fentanyl and methamphetamine by the yet-to-be-fully identified Drug Trafficking Organization. The CS further advised he/she is aware that WEATHERSPOON travels via commercial airline from Los Angeles, California, to Indianapolis, Indiana, among other cities, approximately once per week or every ten days for the purpose of coordinating the transportation of bulk quantities of fentanyl and/or methamphetamine.   The CS stated WEATHERSPOON recruits unknown subjects who are responsible for physically carrying the fentanyl and/or methamphetamine in their checked luggage while WEATHERSPOON may travel with them on the same flight or on another flight.

   9. Investigators conducted a check of Delta Air Lines passenger flight records for WEATHERSPOON.   The flight records check revealed that WEATHERSPOON traveled from Los Angeles, California, to Indianapolis, Indiana, on at least seven separate occasions between June 2023 and November 2023.   This information corroborates the CS's information regarding the frequency of WEATHERSPOON's

---

provided by CS regarding this investigation has been independently corroborated by investigators. Investigators will continue to corroborate all information provided by CS.

travel, city of origin (Los Angeles, California) and destination city (Indianapolis, Indiana).

10. According to the CS, the bulk shipments of fentanyl and/or methamphetamine are concealed in the checked luggage. Once WEATHERSPOON arrives in Indianapolis, Indiana, with unknown individuals carrying the narcotics, WEATHERSPOON travels to Kentucky with the narcotics to meet with retail dealers who purchase fentanyl and/or methamphetamine directly from WEATHERSPOON. The CS stated that once WEATHERSPOON sells the controlled substances to the retail dealers and collects money from them, she returns to Los Angeles, California, via commercial airline with the money she collected from the sale of the controlled substances.

11. Based on this information, your affiant began to monitor WEATHERSPOON's travel. On December 18, 2023, your affiant was alerted that WEATHERSPOON had booked a flight on Delta Air Lines flight 0909 from Los Angeles, California to Indianapolis, Indiana. The flight was scheduled to leave Los Angeles at approximately 11:53 p.m. on December 18, 2023, arriving in Indianapolis at approximately 6:56 a.m. on December 19, 2023. From prior flight analysis, your affiant was aware that WEATHERSPOON and Marlene RICHARDSON had recently flown together to other destinations. Your affiant also learned that RICHARDSON had also booked the same flight to Indianapolis.

12. On December 19, 2023, your affiant and agents/officers from the DEA Indianapolis Office established surveillance in the Indianapolis International Airport

at approximately 6:30 a.m.   At approximately 7:14 a.m., your affiant observed passengers exiting the secure gate area of Concourse A and enter the main concourse. At approximately 7:18 a.m., your affiant observed a black female wearing red-colored clothing enter the main concourse from the secure area of the flight. The black female resembled a photograph of Latasha WEATHERSPOON.  Moments later, your affiant observed another black female wearing orange-colored clothing enter the main concourse from the secure area of Concourse A.  The black female wearing orange clothing resembled a photograph of Marlene RICHARDSON.  Your affiant observed both subjects walk separately in the direction of the escalators leading to the lower-level baggage claim area.

13. At approximately 7:20 a.m., DEA Special Agent (SA) Matt Holbrook observed WEATHERSPOON in the area of baggage claim carousel 3.   Carousel 3 was previously determined by your affiant to be the carousel for obtaining luggage from the Delta Flight 0909 originating in Los Angeles.  At approximately 7:26 a.m., SA Holbrook observed WEATHERSPOON, with luggage, walk to the area of the elevators on the lower level.   At approximately 7:28 a.m., SA Holbrook observed RICHARDSON also walk from the area of carousel 3 over to the area of elevator with luggage.   At this time, SA Holbrook observed both females on the same elevator as they went up to the next level.   Prior to meeting at the elevator, surveillance did not observe either female interacting with one another.  SA Holbrook then observed both females exit the main airport and walk toward the airport parking garage.   At this time, your affiant observed them with a third female subject wearing black clothing.

SA Holbrook continued to observe all three subjects. After walking around for several minutes, all three subjects were observed by SA Holbrook entering a parked GMC Terrain, white in color. After a period of time, your affiant observed the GMC Terrain, bearing Indiana license FL698ADD, exit the Avis Car Rental gate in the airport parking garage at 7:54 a.m. SA Holbrook subsequently made contact with the Avis Desk located in the Airport Garage regarding the rental vehicle. SA Holbrook learned from Avis' personnel that the GMC Terrain had been rented in the name of Latasha WEATHERSPOON from the Indianapolis International Airport on December 19, 2023, with an estimated return date of December 21, 2023, at the Louisville International Airport.

14. DEA SA Craig Frothingham, along with additional law enforcement, surveilled the GMC Terrain as it left the area of the airport. While following the GMC Terrain, SA Kim Gaczkowski observed the GMC Terrain roll through a stop sign at Bridgeport Road and US 40, northbound to eastbound, failing to come to a complete stop. At approximately 8:05 a.m., Indiana State Police Trooper Michael Wright caught up to the vehicle, activated his traffic lights and sirens and initiated a traffic stop at South Girls School Road and US 40. Trp. Wright exited his vehicle and approached the driver side of the GMC. Trp. Wright made contact with the driver, who was WEATHERSPOON. Trp. Wright asked WEATHERSPOON for her license and registration, which she provided her ID and the rental vehicle's information. Trp. Wright returned to his vehicle to begin paperwork for the infraction. Meanwhile, Trp. Butt arrived on scene with his narcotics-detecting canine partner, Apache. Apache is

certified by Dogs for Law Enforcement to detect the following six odors: marijuana, cocaine, crack cocaine, heroin, ecstasy and methamphetamine. Trp. Butt utilized Apache to conduct an open-air sniff around the SUV before Trooper Wright completed his paperwork. Trp. Butt advised that canine Apache gave a positive indication to the presence of the odor of controlled substances on the rear driver side of the GMC.

15. Trp. Wright had WEATHERSPOON exit the vehicle and detained her with handcuffs. Trp. Butt had the front passenger, identified as RICHARDSON, exit the vehicle and detained her with handcuffs. Trp. Butt then had the rear passenger, Christina ENRIQUEZ, exit the vehicle and she was detained with handcuffs as well. Trp. Wright read all three females their Miranda Warnings and each female indicated to Trp. Wright that they understood.

16. All three (3) females advised they were traveling to Louisville for a funeral. However, each female advised a different day that the funeral was going to be conducted.

17. Troopers Wright, Stout and Butt began to search the vehicle and located multiple suitcases throughout the middle and rear of the vehicle. The suitcases were opened and searched. Inside four of the suitcases, Troopers located large vacuum sealed bags containing clothing wrapped around additional vacuum sealed bags containing white crystal-like substances (which later field-tested positive for methamphetamine with a total field weight of 112 pounds, including packaging). The suitcases where the controlled substances were found are described as follows:

   a. One pink suitcase contained one (1) large clear vacuum-sealed bag. Inside the large vacuum-sealed bag, there was another clear vacuum-

sealed bag with black letters reading "MagicBag" containing what appeared to be multiple clear bags with a blue zipper pressure seal that could be seen from the outside, containing the suspected methamphetamine. This suitcase had an airline luggage tag bearing the name Marlene Richardson.

b. One large black suitcase also contained one (1) large clear vacuum-sealed bag. Inside the vacuum-sealed bag, there was another clear vacuum sealed bag with black letters reading "MagicBag" containing what appeared to be multiple clear bags with blue zipper pressure seal that could be seen from the outside, containing the suspected methamphetamine. This suitcase had an airline luggage tag bearing the name Marlene Richardson.

c. One blue suitcase also contained one (1) large clear vacuum-sealed bag with black letters reading "MagicBag" containing what appeared to be multiple clear bags with blue zipper pressure seal that could be seen from the outside, containing suspected methamphetamine. This suitcase had an airline luggage tag bearing the name Christina Enriquez.

d. One small black suitcase contained one (1) large clear vacuum sealed bag containing what appeared to be multiple clear bags with pink zipper pressure seal that could be seen from the outside containing suspected methamphetamine. This suitcase had an airline luggage tag bearing the name Christina Enriquez.

MagicBag bags containing methamphetamine located in each of the four suitcases:

   

Exhibit 1        Exhibit 2        Exhibit 3        Exhibit 4

18.    Law enforcement removed the airline luggage tags from three of the luggage containing the suspected methamphetamine for evidence.  The tag on the pink suitcase was not removed.  All four pieces of luggage found to contain the field-tested methamphetamine were seized as evidence along with the 112 pounds of field-tested methamphetamine.

19. ISP Trooper continued with the search of the vehicle.  During the search of the vehicle and its contents, agents seized the following electronic devices:

- Christina ENRIQUEZ had a black iPhone on her person **(Phone 1)**. This black cellular telephone had a screen background of a picture of her.

- An iPhone with tan and gold glitter case **(Phone 2)** located on the center console. Latasha WEATHERSPOON indicated that this phone belonged to her.

- Two (2) iPhones were located on the front passenger seat where Marlene RICHARDSON had been sitting. One iPhone had a light pink back (**Phone 3**) and the other iPhone was in a case that contained a photo background (**Phone 4**).  RICHARDSON indicated that these phones were hers.

- Another iPhone with green back **(Phone 5)** and a silver iPad **(Device 1)** were found in a piece of luggage in the car. RICHARDSON stated that these two

devices (Phone 5 and Device 1) belonged to her daughter, who was not present. Both devices were seized and placed with items belonging to RICHARDSON.

- A silver Apple MacBook Laptop **(Device 2)** in a soft pink sleeve was located in a black bag. ENRIQUEZ identified the Apple MacBook as belonging to her.

- The five telephones and the two devices are collectively referred to as the **Devices.**

20. During a roadside interview of Enriquez conducted by DEA TFO Shawn Wininger, ENRIQUEZ advised that "Tasha" (referring to WEATHERSPOON) was paying her between $1,000 - $2,000 per trip. ENRIQUEZ said she had done three or four trips total to Louisville with WEATHERSPOON. ENRIQUEZ stated that WEATHERSPOON contacted a subject named "G" to give the suitcases to; however, "G" was recently arrested so they were supposed to meet with an unknown person in Louisville. ENRIQUEZ advised she did not know what was in the bags she brought. ENRIQUEZ further stated that she communicated with WEATHERSPOON using her phone regarding the itineraries involving the trips. Your affiant obtained Delta flight records for ENRIQUEZ since January 2023 to December 19, 2023. Your affiant observed that ENRIQUEZ had taken three Delta flights from Los Angeles to Indianapolis during this time.

21. When agents seized the cellular phone with a light pink back (Phone 3, RICHARDSON's phone) they observed on the screen that the phone had the GPS application active with a Louisville address, consistent with the CS's information that WEATHERSPOON would be traveling to Kentucky from Indiana.

22. On January 12, 2024, the Honorable US Magistrate Judge M. Kendra Klump authorized search warrants under case number 1.24-mj.0041-MKK for all the seven devices seized on December 19, 2023, as described in paragraph 19.

23. The five telephones and the iPad were handed to United States Secret Service (USSS) Forensic Examiner (FE) Christopher Carter, in Indianapolis, for data extraction as authorized by the search warrant. Device 2 (MacBook) remained at the DEA Indianapolis District Office for your affiant's review as authorized by the search warrant.

24. FE Carter was able to complete data extraction on ENRIQUEZ's Telephone (Phone 1), WEATHERSPOON's Telephone (Phone 2), RICHARDSON's Telephones (Phone 3, Phone 4, and Phone 5), and Device 1. However, FE Carter was unable to extract information from RICHARDSON's Phone 4 or Device 1 (iPad).

25. Following the arrests by state authorities, your affiant obtained from Airport Authorities, the Indianapolis International Airport Video footage and photographs after the arrival of WEATHERSPOON, RICHARDSON, and ENRIQUEZ. Your affiant viewed the video footage and photographs and observed both ENRIQUEZ and RICHARDSON in possession of the four suitcases found containing the methamphetamine (seized during the traffic Stop) after they retrieved the luggage from the airport baggage carousel. WEATHERSPOON was observed carrying additional luggage. Your affiant made attempts with Delta Air Lines security to obtain video footage of the three subjects checking in at the Los Angeles International

Airport. However, Delta Air Lines security was unable to obtain any video footage of the subjects checking in at the Los Angeles International Airport.

26. At the DEA Indianapolis District Office, your affiant and SA Matt Holbrook began processing the suitcases as evidence. While processing, the blue suitcase found previously containing suspected methamphetamine also contained a black purse that further contained a Visa Card in the name of Marlene RICHARDSON. The airport video footage showed this had been a suitcase that ENRIQUEZ had been in possession of at the Indianapolis International Airport.

27. On January 16, 2024, your affiant conducted a preliminary review of ENRIQUEZ's phone (Phone 1) and RICHARDSON's phone (Phone 3) per the authorized search warrant. Telephone number (951) 322-6015 assigned to Phone 1 was subscribed to Christine ENRIQUEZ at 6540 Hayvenhurst Ave, Van Nuys, CA with T-Mobile. Meanwhile, your affiant also learned that telephone number (470) 257-3480 assigned to Phone 3, was subscribed to Marlene RICHARDSON with T-Mobile and no address listed.

28. During a review on ENRIQUEZ's phone (Phone 1) your affiant found that telephone number (213) 393-3297 assigned to Latasha WEATHERSPOON's phone (Phone 2) was saved in the contacts as "Tasha".

29. On January 30, 2024, your affiant received the telephone data extractions performed by the US Secret Service per the authorized warrants and proceeded to review the data extracted from all the telephones.

30. Your affiant learned that telephone number (213) 393-3297 assigned to WEATHERSPOON's phone (Phone 2) was subscribed to Eulanda Lynn Matthews at 3826 Cherrywood Ave, Los Angeles, CA with Verizon. Your affiant was aware this was the same address as listed on the Avis Rental Agreement under Latasha WEATHERSPOON's name for the rental vehicle that WEATHERSPOON was driving at the time of the traffic stop on December 19, 2023.

31. Your affiant found that in RICHARDSON's phone (Phone 3), WEATHERSPOON's phone number (213) 393-3297, assigned to Phone 3, was saved as "Whole Heart" in its contacts.

32. The following is a portion of a conversation using the Telegram App, between ENRIQUEZ and WEATHERSPOON on October 4, 2023, at approximately 9:00 a.m. extracted from ENRIQUEZ's Phone (Phone 1).

| Date/Time | Chrissy | Tasha |
|---|---|---|
| 10/4/23 9:00 AM | I'm Bout to call my car where should I meet yu | |
| 10/4/23 9:00 AM | | Burbank |
| 10/4/23 9:01 AM | | I'll reimburse this trip |
| 10/4/23 9:03 AM | | It's a big accident on the 405 north so the sooner the better |
| 10/4/23 9:03 AM | | I'm over here watching the news |
| 10/4/23 9:18 AM | Ok | |
| 10/4/23 9:47 AM | | Hey hey how long before u arrive I'll bring your bag down I'll go ahead and book the lyft from here |
| 10/4/23 10:03 AM | Pulling in now | |
| 10/4/23 10:03 AM | | Ok |
| 10/4/23 10:04 AM | Outside | |
| 10/4/23 12:47 PM | | Let me know when u get there. Also go Ahead a book your flight home he has your money when u get KY. I get there at 11:00pm |
| 10/4/23 3:10 PM | Ok | |
| 10/4/23 3:10 PM | | How's your flight soo far |
| 10/4/23 3:11 PM | | Trying to kill two birds and one stone |

14

| | | |
|---|---|---|
| 10/4/23 3:11 PM | So far all good | |
| 10/4/23 4:45 PM | | Did u land or did he contact u |
| 10/4/23 4:45 PM | Yes all good heading out | |
| 10/4/23 4:46 PM | | Cool Beans |
| 10/4/23 7:31 PM | | Hey hey u waiting for me or u leaving before I get there |
| 10/4/23 7:31 PM | I'll be here my flight is at 6am | |
| 10/4/23 7:32 PM | | I told him to give u $2500 because I was going to send u the remainder. |
| 10/4/23 7:33 PM | | But it ok |

33. Based on training and experience, and knowledge of this investigation, your
affiant believes that the reviewed communication between these subjects indicates
both ENRIQUEZ and WEATHERSPOON were discussing a trip from Los Angeles to
Louisville, Kentucky.  Your affiant believes that this communication reveals that
prior to leaving on October 4, 2023, ENRIQUEZ picked up a bag from
WEATHERSPOON in Burbank, California.  Based on further flight analysis and
review of further messages, your affiant was aware that ENRIQUEZ flew to
Kentucky and made contact with an unknown male on October 4, 2023.  ENRIQUEZ
was expected to receive $2,500.00 from the unknown male.  Your affiant also located
flight records that showed ENRIQUEZ flying back to Los Angeles from Louisville on
October 5, 2023.  Your affiant believes that ENRIQUEZ transported the bag obtained
from WEATHERSPOON to Kentucky and was paid $2,500.00 for this activity.  Your
affiant is aware that narcotics couriers get paid for their transport services.  Based
on your affiant's knowledge of this investigation, your affiant believes a payment by
the unknown male to ENRIQUEZ in this amount is consistent with ENRIQUEZ

transporting 50 grams or more of methamphetamine on the behalf of WEATHERSPOON.

34. During further review of RICHARDSON's phone (Phone 3), your affiant found two videos depicting what appeared to be suspected methamphetamine, based on your affiant's training and experience. In one video (Video 1), your affiant could hear RICHARDSON talking in the background and observed clear plastic bags containing suspected methamphetamine on the floor while WEATHERSPOON handled packages wearing gloves and a face mask. In this video your affiant could also see MagicBags like the ones found containing the seized methamphetamine at the traffic stop on December 19, 2023. This video was created on December 13, 2023[2]. Your affiant was familiar with RICHARDSON's voice after listening to her voice during the traffic stop as well as listening to RICHARDSON's jail calls while she was detained at the Marion County, Indiana Jail.



Screenshot of Video 1

---

[2] The data extractions for the devices often provide a creation date for the data. When referring to the date of a photograph or video, your affiant used the creation date or the date listed on the actual image/video to determine the date of the photograph or video.

35. The following is an excerpt obtained from Telegram App, within RICHARDSON's phone (Phone 3). It details communication between WEATHERSPOON and RICHARDSON on December 14, 2023, at approximately 6:55 a.m. At approximately 6:58 a.m., RICHARDSON ("Misha Joe") and WEATHERSPOON ("Whole Heart") had the following exchange:

| Date/Time | MISHA JOE | WHOLE HEART |
|---|---|---|
| 12/14/23 6:58 AM | Ima let em go around twice | |
| 12/14/23 6:58 AM | | Let the bags go around twice and Make sure their zipped right |
| 12/14/23 6:59 AM | Yea I know I just wrote u that lmao | |
| 12/14/23 7:03 AM | Pink look opened | |
| 12/14/23 7:03 AM | Or was that not ours | |
| 12/14/23 7:03 AM | | That was our but the look the same to me |

36. Your affiant also found flight records for both RICHARDSON and WEATHERSPOON showing travel from Los Angeles to Nashville, leaving at 11:59 p.m. on December 13, 2023, arriving on December 14, 2023 at 6:04 a.m. Based on training and experience, your affiant believes that the reviewed communication between these subjects indicates both RICHARDSON and WEATHERSPOON were closely observing their luggage upon arrival in Nashville. Both separately sent communication to one another to let the bags go around twice on the baggage claim belt and WEATHERSPOON further wrote to "make sure their zipped right". Your affiant believes RICHARDSON and WEATHERSPOON let the checked bags go around two times to better observe their luggage to eliminate concern that law enforcement or someone else had not inspected their luggage. Your affiant believes

17

some or all of the checked bags contained the suspected methamphetamine observed in the Video 1 created December 13, 2023, prior to the flight. In addition, your affiant believes that it is unusual for people traveling together to communicate through messaging when they are at the baggage claim area retrieving their checked luggage. Your affiant believes that these communications are evidence of Richardson and Weatherspoon conspiring with one another to Possess with Intent to Distribute at least 50 grams of methamphetamine.

37. Upon review of multiple photographs from Richardson's phone (Phone 3) your affiant found two photographs of suspected methamphetamine. The first photograph (Picture 1) was created December 17, 2023. In this photograph, Weatherspoon is seen sitting on the floor wearing gloves. Based on your affiant's training and experience, your affiant observed what appeared to be packages connected with rope/string on the floor near Weatherspoon. Your affiant is aware that packages containing controlled substances are often connected by rope/string when they are



Picture 1

18

first acquired following being transported.  The packages are often placed in voids in conveyances during transport and are removed from the conveyances by pulling out the packages from the void by the rope/string.   In this photograph, your affiant also observed a MagicBag box and some MagicBags near Weatherspoon.   These MagicBags were identical to the ones found containing the methamphetamine inside the four pieces of luggage found during the traffic stop on December 19, 2023.

38. In the second video (Video 2) that your affiant found in Richardson's phone (Phone 3), your affiant observed large Ziploc bags with blue sealing strips containing suspected methamphetamine on the floor in a living room area.  This Video 2 was created December 18, 2023.  At the beginning of the video, your affiant observed Marlene Richardson's face looking at the camera before turning the camera to the suspected methamphetamine on the floor. Based on the observations of the methamphetamine seized on December 19, 2023, the large Ziploc bags observed in the video created on December 18, 2023,  appeared to be identical to some of the bags seized during the traffic stop and also in the same room previously mentioned.



Screenshot of Video 2

19



Picture 2

39. Your affiant found a second photograph (Picture 2) in Richardson's phone (Phone 3) of the suspected methamphetamine in Video 2.   This photograph was created December 18, 2023, the same date when Video 2 was created. Your affiant found this photograph to be consistent with the observations in the previously referenced second video where your affiant observed the Ziploc bags with blue sealing strips containing suspected methamphetamine on the floor in a living room area.

40. Your affiant located communications between Weatherspoon, Richardson, and Enriquez in all three devices: Phone 1, Phone 2, and Phone 3, related to the coordination of their travel from Los Angeles to Indianapolis on December 18th and December 19th, 2023, in addition to other prior travel.  These communications were over multiple messaging services to include, but not limited to, iMessages and Telegram.

41. Your affiant reviewed the data extraction on Phone 3 (Richardson's Phone) and found that Richardson self-identified her contact name as "Misha Joe" on her Telegram App. The following is a portion of a communication extracted from

Richardson's phone (Phone 3), between Richardson ("Misha Joe") and Weatherspoon ("Whole Heart") using Telegram on December 18, 2023:

| Date/Time | MISHA JOE | WHOLE HEART |
|---|---|---|
| 12/18/23 12:55 AM | So then how we gone get from Indi to Kentucky | |
| 12/18/23 12:56 AM | | Cause theirs no point in going to ole boy if he don't want nothing. |
| 12/18/23 12:56 AM | | Rental |
| 12/18/23 1:22 PM | | Ok u want me to send u the bread or send it to who |
| 12/18/23 1:45 PM | | Ok |
| 12/18/23 1:23 PM | | Ok |
| 12/18/23 1:45 PM | Send to JAMICAH | |
| 12/18/23 2:18 PM | | Take the night flight to indi |
| 12/18/23 2:34 PM | | You did it |
| 12/18/23 2:34 PM | Yes | |
| 12/18/23 3:26 PM | | Krissy is coming she understands what I have going on so she's not tripppin |
| 12/18/23 3:27 PM | Ok | |
| 12/19/23 2:55 AM | | Are your bags on |
| 12/19/23 2:55 AM | Yea | |
| 12/19/23 2:55 AM | | Ok |
| 12/19/23 7:20 AM | | Meet me at Avis rental car |
| 12/19/23 7:20 AM | Idek where that is lol I'll find it | |
| 12/19/23 7:26 AM | | Go up the elevator by the door |

42. Based on my training and experience, and knowledge of this investigation, I believe that when Richardson asks Weatherspoon "So then how we gone get from Indi to Kentucky", Richardson is asking Weatherspoon how they will get to Kentucky after landing at the Indianapolis airport. When arrested, all three told the state troopers that they were going to a funeral in Louisville, although they all said different dates. To Richardson's question, Weatherspoon responds "Rental", which I believe referred to travelling by car in rental car. Furthermore, it is Weatherspoon who tells

Richardson to meet her at Avis rental when Weatherspoon tells Richardson "Meet me at Avis rental car." When detained at the traffic stop, ISP troopers obtained from Weatherspoon, as the driver, rental documents for the vehicle from Avis Car Rental under Weatherspoon's name, consistent with the information that your affiant obtained from the Avis Car rental personnel that same day of December 19, 2023, when the traffic stop occurred. Furthermore, when Weatherspoon stated "Krissy is coming she understands what I have going on so she's not trippin" your affiant believes that Weatherspoon was telling Richardson that Christine Enriquez was travelling with them (Richardson and Weatherspoon) because Enriquez knew that Weatherspoon was transporting methamphetamine inside the luggage and she (Enriquez) was not scared about it.

43. The DEA Central Laboratory conducted analysis of the four seized bags previously identified in this affidavit as Exhibit 1, Exhibit 2, Exhibit 3, and Exhibit 4. The findings were reported as:

- Exhibit 1: approximately 12,520 grams of Methamphetamine Hydrochloride
- Exhibit 2: approximately 12,529.5 grams of Methamphetamine Hydrochloride
- Exhibit 3: approximately 12,185.2 grams of Methamphetamine Hydrochloride
- Exhibit 4: approximately 2,654.2 grams of Methamphetamine Hydrochloride

Exhibit 4 also contained approximately 7,984.7 grams of a substance which is not controlled. This substance was found in 18 Ziploc bags of Exhibit 4. Based on your affiant's training and experience, your affiant believes this substance was intended

to be used as a cutting agent and mixed with the methamphetamine hydrochloride contained in the four exhibits for further distribution. The technique of cutting methamphetamine hydrochloride with another substance allows methamphetamine distributors to sell a lower quality product allowing a higher profit made from the sale of the methamphetamine containing a cutting agent.

## CONCLUSION

44. Based on my training and experience, and the facts set forth herein, I respectfully submit that there is probable cause to believe:

  a.    Count 1: Beginning in or around October 2023, the exact date being unknown, and continuing through December 19, 2023, the following individuals engaged in a Conspiracy to Distribute and Distribution of 500 Grams or More of a Mixture or Substance Containing a Detectable Amount of Methamphetamine, in violation of 21 U.S.C. § § 841(1), (b)(1)(A), and 846:

  i.    Latasha WEATHERSPOON (DOB XX-XX-1987),

  ii.    Marlene RICHARDSON (DOB XX-XX-1992), and

  iii.    Christine ENRIQUEZ (DOB XX-XX-1993).

  b.    Count 2:    On or about December 19, 2023, Latasha WEATHERSPOON (DOB XX-XX-1987), Marlene RICHARDSON (DOB XX-XX-1992), and Christine ENRIQUEZ (DOB XX-XX-1993). Possessed with intent to distribute 500 Grams or More of a Mixture or Substance Containing Methamphetamine, in violation of 21 U.S.C. § 841(1), (b)(1)(A)(viii), and 18 U.S.C. § 2.

45. Accordingly, I request the Court issue a criminal complaint charging them with the offense(s) listed above, and issue warrants for their arrest.

*/s/ Sean P. Yauger*
Sean P. Yauger, Special Agent
Drug Enforcement Administration

Attested to by the applicant in accordance with the requirements of Federal Rules of Criminal Procedure 4.1 and 41(d)(3) by reliable electronic means.

Date: March 21, 2024



Kellie M. Barr
United States Magistrate Judge
Southern District of Indiana

24